IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
_____

MELVIN McCLENDON

   PLAINTIFF                                       15 Civ 3671 (PKC)(RER)
                                                              FIRST AMENDED
   vs                                                 COMPLAINT (JURY TRIAL)

THE CITY OF NEW YORK, a municipal
entity, NEW YORK CITY POLICE OFFICER
JEREMY (previously shown as "JOE")
KOSTOLNI, Tax No. 955024, NEW YORK
CITY POLICE OFFICERS"JOHN DOES",
NEW YORK CITY POLICE OFFICER ORHAN
BAYRAM, Tax. No. 954537, NEW YORK CITY
POLICE OFFICER (SERGEANT) ANGEL
VASQUEZ, TAX No. 931537, all of the identified
and non identified persons in their individual and in
their official capacities,

   DEFENDANTS
_____

## I.  INTRODUCTION

   1.   1. This is a litigation which arises out of an event which occurred on May 7, 2015 in the vicinity of Sutter Avenue and Suffield Street, City of New York, the Borough of Brooklyn the County of Kings, the State of New York at or about11:00 A.M.. and continuing thereafter.  The Plaintiff was stopped and detained and arrested and assaulted, battered and subjected to excessive and unreasonable and unnecessary force and taken into custody and imprisoned for a period of time.

   2. The Plaintiff was released from Brooklyn Central Booking thereafter without appearing in Court in Kings County on any charges related to his arrest.

   3. Rather than being allowed to leave however, the Plaintiff was then transported to Queens, New York, related to an alleged outstanding warrant.

   4. Previously, the Plaintiff had been arrested in Queens on a marijuana possession charge; and he was required to pay a fine/court costs in the amount it is believed of $260.00 associated therewith. The arrest occurred in the spring/summer of 2014.

   5. The Plaintiff had made some payments on the fine/court costs in the amount of $60.00.  He made those payments it is believed in 2014.

   6. Because of the fact that the Plaintiff has limited income, he was not able, yet to have made the payment of the fine/court costs in full; and it is believed such was what propelled the issuance of an alleged warrant.

   7. When the Plaintiff appeared in the Queens Criminal Court upon his transport thereto, the Court directed that he be incarcerated for a period of ten days subject to early release if he paid the outstanding fine/court cost balance (as described).

   8. The Plaintiff was not able to do so because he was not able to come up with the monies although the money he had in his possession and which had been vouchered at the time of his Brooklyn arrest was sufficient to pay his outstanding balance of the fine/costs. The Plaintiff was not able to get access to those monies even though he made the Queens Criminal Court Judge aware of the fact that he had the money available to him if he could get access to such.

   9. Accordingly, the Plaintiff was required to spend seven days in jail before he was released (being credited with good time).

   10. This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States; and, as well, under the laws and Constitution of the State of New York.

   11. The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief (if appropriate), as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of his rights.

## II. JURISDICTION

   12. Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 and 1367 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

   13. The facts which give rise to the State law claims have a common nucleus with the facts which give rise to the federal law claims. The federal and the pendent State law claims arise out of the same transaction and event.

   14. The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

15. This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States; and, as well, as guaranteed under the laws and Constitution of the State of New York.

## III. THE PARTIES

16. The Plaintiff is an African American citizen and resident of the State of New York, the City of New York, and the County Kings.

17. The Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which is authorized with, among other powers, the power to maintain a police department for the purpose of protecting the welfare of those who reside in the City of New York.

18. Defendants "John Does" and Jeremy (previously identified as"Joe") Kostolni, Tax No. 955024, Orhan Bayran, Tax No. 954537, and Angel Vasquez are New York City Police Officers and agents and employees of the City of New York.  Although their actions and conduct herein described were unlawful and wrongful and violated  the Plaintiff's rights as guaranteed under the laws and Constitution of the United States and as guaranteed under the laws and Constitution of the State of New York, they were taken in and during the course of their duties and functions as New York City Police Officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance of their duties and functions as New York City Police Officers and agents and employees of the City of New York.

## IV. ALLEGATIONS

19. The Plaintiff is an African American citizen.

20. The Plaintiff, who is a resident of the Borough of Brooklyn, the City of New York, County of Kings, the State of New York, is thirty five (35) years of age.

21. The Plaintiff's birth date is June 2, 1980.

22. The Plaintiff is single.

23. The Plaintiff resides at 160 Hull Street, Brooklyn, New York 11233 (2nd floor).

24. The Plaintiff resides at the foregoing address for approximately two years.

25. The Plaintiff was born in Oklahoma and moved to New York City with his parents; and, then, resided with his father in Brooklyn, New York shortly after his parents divorced once they moved to New York.

26. The Plaintiff attended IS 218 in Brooklyn, New York.

27. The Plaintiff attended Canarsie High School.

28. The Plaintiff completed 9th grade.

29. Thereafter and in 2015, the Plaintiff obtained an on line high school diploma.

30. The Plaintiff is employed as a truck driver by MCB, a private transport entity located at 179-30 93rd Avenue, Jamaica, Queens, New York 11433.

31. In his position, the Plaintiff is an "on call" as a driver for MCB; and, when he is called, he places freight on a truck and, then, delivers freight to various locations.

32. The Plaintiff has been employed as a driver as described for approximately one year and one half.

33. This is a litigation which arises out of an event which occurred on May 8, 2015 in the vicinity of Sutter Avenue and Suffield Avenue, City of New York, the Borough of Brooklyn the County of Kings, the State of New York at or about12:00 to 12:30 P.M. and continuing thereafter. The Plaintiff was stopped and detained and arrested and assaulted, battered and subjected to excessive and unreasonable and unnecessary force and taken into custody and imprisoned for a period of time.

34. The Plaintiff was released from Brooklyn Central Booking thereafter without appearing in Court in Brooklyn on any charges related to his arrest.

35. Rather than being allowed to leave however, the Plaintiff was then transported to Queens, New York, related to an alleged outstanding warrant.

36. Previously, the Plaintiff had been arrested in Queens on a marijuana possession charge; and he was required to pay a fine/court costs in the amount it is believed of $260.00 associated therewith. The arrest occurred in the spring/summer of 2014.

37. The Plaintiff had made some payments on the fine/court costs in the amount of $60.00. The Plaintiff made those payments, it is believed, in 2014.

38. Because of the fact that the Plaintiff has limited income, he was not able yet to have made the payment of the fine/court costs in full; and it is believed such was what propelled the issuance of an alleged warrant.

39. When the Plaintiff appeared in the Queens Criminal Court upon his transport thereto (the Plaintiff was first transferred to Queens Central Booking for some hours and then to the Queens Criminal Court), the Queens Criminal Court Judge Court directed that the Plaintiff be incarcerated for a period of ten days subject to early release if he paid the outstanding fine/court cost balance (as described).

4

40. The Plaintiff was not able to do so because he was not able to come up with the monies although the money he had in his possession and which had been vouchered at the time of his Brooklyn arrest and was sufficient to pay the outstanding balance of the fine/costs. The Plaintiff was not able to get access to those monies even though he made the Queens Criminal Court Judge aware of the fact that he had the money available to him if he could get access to such.

41. Accordingly, the Plaintiff was required to spend seven days in jail before he was released {being credited with good time).

42. On May 7, 2015 at or about 11:00 A.M., the Plaintiff was walking from his girl friend's residence on Sutter Avenue and Suffield Street across the street to the store (in order to get some milk for his girlfriend's mother) when two uniformed New York City police officers, who were standing in the vicinity, directed the Plaintiff to come over to them.

43. The Plaintiff had gone to work that morning and left when, because of an issue with the truck, he was not able to drive. The Plaintiff left work, then, to go to his girlfriend's residence in Brooklyn.

44. Without hesitation, the Plaintiff complied with the direction and went over to the two uniformed New York City police officers.

45. As noted, the Officers, one of whom is believed to be Police Officer Kostolni, were in uniform. The other is believed to be Police Officer Orhan Bayram.

46. Both Officers were white males, one younger and the other older.

47. It is the younger Officer who said to the Plaintiff that he should come over to where the two uniformed New York City Police Officers were standing.

48. The younger New York City Police Officer reached into the Plaintiff's right front pocket where the Plaintiff had a small knife that he utilized in work to cut packages and materials that he was transporting in his position as a driver (as described previously herein). The Plaintiff informed the Officer that he utilized the knife for work. The knife, which was dull, was not an unlawful knife and there was nothing whatsoever to suggest that it was an unlawful knife. It was not a switch blade knife or a gravity knife. It was a small, palm size, pull open knife.

49. The younger white uniformed New York City Police Officer withdrew the knife from the Plaintiff's pocket; and he asked the Plaintiff to provide identification which the Plaintiff did without any hesitation.

50. The younger white uniformed New York City Police Officer informed the Plaintiff that he was going to write the Plaintiff a Summons.

51. At or about that time, the Plaintiff was directed by the older white uniformed New York City Police Officer to put his hands behind his back at which time the younger white New York City Police Officer placed a handcuff on the Plaintiff's wrist and began to life the Plaintiff's arm upwards toward his shoulder causing the Plaintiff to suffer sharp pain to which he reacted.

52. The Plaintiff felt a sharp pain in his upper arm and shoulder.

53. The Plaintiff fell to the ground along with the New York City Police Officers. Previously and before they fell, the Plaintiff had stated to the Officers that they were raising his arm up too high and that it hurt.

54. Other New York City Police Officers appeared at the location at or about that time including, it is believed, a New York City Police Department Sergeant. It is believed that the Sergeant was Angel Vasquez.

55. The Plaintiff was struck about his body while on the ground.

56. The Plaintiff was brought up to a standing position and placed in a New York City Police Department van.

57. The Plaintiff was transported to the 75th Precinct on Sutter Avenue.

58. At the Precinct the Plaintiff informed the personnel at the desk that he was having trouble breathing and that he was in pain in his upper arm, neck, and shoulder area and that he wanted medical attention.

59. The Plaintiff was placed in a holding cell at the 75th Precinct.

60. Medical personnel arrived at the Precinct and the Plaintiff was transported to the Brookdale Hospital in Brooklyn where he received treatment for the conditions that he described.

61. Thereafter, the Plaintiff was returned to the 75th Precinct.

62. The Plaintiff remained at the Precinct for some period before being transported to Brooklyn Central Booking.

63. Rather than appearing before a Judge in the Brooklyn Criminal Court, the Plaintiff was informed that he was being released.

64. Rather than being released, the Plaintiff was informed that there was an outstanding warrant I for him in Queens; and the Plaintiff was transported to Queens where he appeared before a Judge on Friday, late in the afternoon (May 8, 2015).

65. Previously, the Plaintiff had been arrested in Queens for a minor marijuana charge; and, at that time, the Plaintiff was required to pay a fine/court costs in connection with the offense with which he had been charged.

66. The fine/court cost was in the amount of $260.00.

67. The Plaintiff was given time dispensation to make the payment because of his income limitations.

68. The Plaintiff made two payments in the amount of $60.00 in 2014.

69. The Plaintiff was never informed, in writing or otherwise, that he needed to make further payments or else face a further penalty including arrest for failure to make the full payment even with the time dispensation given to him to make the total payment.

70. Apparently and without his knowledge a warrant was issued for the Plaintiff's arrest because he had not completed the payment of the imposed fine/court costs.

71. Thus, such lead to the Plaintiff's transport to the Queens Criminal Court from Brooklyn as a consequence of the Plaintiff's arrest May 7, 2015 Brooklyn based arrest and notwithstanding that he was not charged with anything arising out of the May 7, 2015 stop, detention and custodial arrest leading the Plaintiff to incarceration for a period of time in and at the 75th Precinct and thereafter at Brooklyn Central Booking (from which he was released only, then, to be transported to Queens on the outstanding warrant that the Plaintiff was unaware existed).

72. When the Plaintiff appeared in the Queens Criminal Court upon his transport thereto, the Court directed that he be incarcerated for a period of ten days subject to early release if he paid the outstanding fine/court cost balance (as described).

73. The Plaintiff was not able to do so because he was not able to come up with the monies. He was not able to come up with the monies although he informed the Queens Criminal Court Judge that he had the monies but that the monies had been vouchered and he needed to get access to such. The Plaintiff was not given access to those monies.

74. Accordingly, the Plaintiff was required to spend seven days in jail before he was released {being credited with good time).

75. The Plaintiff committed no criminal offense or other offense whatsoever and no reasonable police officer could have believed that the Plaintiff committed any criminal offense or any other offense of and under the law to justify his stop, detention, custodial arrest, further detention, the preferral of any charge, and his prosecution associated therewith.

76. There was no basis for the stop, detention and eventual custodial arrest of the Plaintiff by the New York City Police Officers, each of whom is an agent and employee of the City of New York.

77. The Plaintiff was subjected to unreasonable, unnecessary and excessive force in connection with the stop, detention, and custodial arrest.

78. The Plaintiff was subjected to unnecessary, unreasonable and excessive force in the course of his stop, detention and custodial arrest and otherwise denied unnecessary, unreasonable and excessive terms and conditions of his custodial arrest.

79. While the actions and conduct of the New York City Police Officers were unlawful they were taken in the course of their duties and functions and incidental to the otherwise lawful performance of those duties and functions as New York City Police Officers and as agents and employees of the City of New York. Among other Officers believed to be part of the New York City Police Department activities and actions as described was New York City Police Officer Jeremy Kostolni, Tax Identification Number 955024, New York City Police Officer Orhan Bayram, Tax Identification Number 954357 and New York City Police Officer (Sergeant) Angel Vasquez, New York City Tax Identification Number 931365.

80. There was no basis for the stop and detention of the Plaintiff and there was no probable cause for the arrest of the Plaintiff or for the preferral of charges against the Plaintiff or for the prosecution of the Plaintiff.

81. There was no justification for the unnecessary, unreasonable, and excessive force which was utilized by the New York City Police Officers in connection with the stop, detention and the custodial arrest and all associated therewith.

82. There was no justification for the unnecessary, unreasonable, and excessive terms and conditions of the Plaintiff's stop, detention and custodial arrest.

83. The Plaintiff was unlawfully stopped and detained since there was no basis for the initial stop and detention and he was subjected to a false arrest and unlawful custodial detention and imprisonment; and the Plaintiff was subjected to unreasonable and unnecessary force associated with his stop, detention, and custodial arrest and as well to unnecessary, excessive and unreasonable terms and conditions of his custodial arrest.

84. The actions and conduct herein described were propelled by the quality of life and crime offense enforcement initiatives of the City of New York which is grounded in the philosophy of the "ends justifies the means" including but not limited to racial and national origin profiling that propels New York City Police Officers to make unlawful and otherwise unjustified detentions of individuals simply because of the race of the individual as an African American and/or because of the apparent identity of the individual as a member of the Latino community and of some Hispanic based national origin.

85. Such qualified of life and "broken windows" crime offense enforcement initiatives propel officers to make stops, detentions, and custodial arrests where there is no basis for the initial stop and detention and no probable cause for any arrest and, by such, generate arrest statistics and to otherwise make examples of individuals in the hope that such would depress crime offenses; and such quality of life and crime enforcement initiatives and policies and practices and customs associated therewith propel officers to otherwise engage in unreasonable, unnecessary and excessive conduct in association with the stops, detentions, and custodial arrests being effected pursuant to the afore-described policies and practices of the City of New York and its Police Department.

86. The policy and practices have a disproportionate impact on African Americans and/or Latino individuals of some perceived Hispanic national origin who, because of their race and/or national origin or perceived national origin, are, disproportionately and for no other reason but the race factor and/or a Hispanic based national origin or perceived national origin factor, singled out for stops, detentions and arrests and derogatory and unequal and otherwise unlawful and unjustified treatment, based on racial considerations and bias, and discriminatory treatment based on racial factor and/or national origin based bias.

87. The Plaintiff was unlawfully stopped and detained and falsely arrested and subjected to discriminatory conduct and subjected to the malicious abuse of criminal process and excessive and unreasonable and unnecessary force and excessive and unreasonable conditions of his custodial detention.

88. The actions, conduct, policies and practices and customs herein described violated the Plaintiff's rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

89. The actions, conduct, policies and practices, and customs violated the Plaintiff's rights under the laws and Constitution of the State of New York including unlawful detention, false arrest and imprisonment, malicious abuse of criminal process and assault and battery (in the form of the physical actions associated with the stop, detention and the taking of the Plaintiff into custody), discrimination, and excessive detention and excessive and unreasonable and unnecessary terms and conditions of the custodial detention.

90. The actions, conduct, policies and practices and customs were negligent and otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

91. The Plaintiff suffered injuries and damages including loss of liberty, fear, anxiety, mental distress, emotional anguish, and psychological trauma and physical pain and suffering.

92. The Plaintiff has not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

93. The Plaintiff has no other adequate remedy at law but for the institution of this litigation.

## V.  CAUSES OF ACTION

### A.  FIRST CAUSE OF ACTION

94. The Plaintiff reiterates Paragraph #'s 1 through 93 and incorporates such by reference herein.

95. The Plaintiff was unlawfully stopped and detained and arrested in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

96. The Plaintiff suffered injuries and damages.

### B.  SECOND CAUSE OF ACTION

97. The Plaintiff reiterates Paragraph #'s 1 through 96 and incorporates such by reference herein.

98. The Plaintiff was unlawfully stopped and detained and arrested in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

99. The Plaintiff suffered injuries and damages.

### C.  THIRD CAUSE OF ACTION

100. The Plaintiff reiterates Paragraph #'s 1 through 99 and incorporates such by reference herein.

101. The Plaintiff was subjected to unnecessary, unreasonable and excessive force in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

102. The Plaintiff suffered injuries and damages.

### D.  FOURTH CAUSE OF ACTION

103. The Plaintiff reiterates Paragraph #'s 1 through 102 and incorporates such by reference herein.

104. The Plaintiff was subjected to assault and battery and excessive force in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

105. The Plaintiff suffered injuries and damages.

### E. FIFTH CAUSE OF ACTION

106. The Plaintiff reiterates Paragraph #'s 1 through 105 and incorporates such by reference herein.

107. The policies, practices and customs herein described propelled the actions and conduct herein. Those policies, practices, and customs violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

108. The Plaintiff suffered injuries and damages.

### F. FIFTH CAUSE OF ACTION

109. The Plaintiff reiterates Paragraph #'s 1 through 108 and incorporates such by reference herein.

110. It is believed that the policies and practices as applied have a disproportionate impact on members of New York City's minority communities, especially and particularly Black and Brown peoples including Latino community members and African American community members.

111. The policies and practices as applied are racially discriminatory and violate the Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

112. The Plaintiff suffered injuries and damages.

### F. SIXTH CAUSE OF ACTION

113. The Plaintiff reiterates Paragraph #'s 1 through 112 and incorporates such by reference herein.

114. The policies and practices as applied herein violated the Plaintiff's rights under the law and Constitution of the State of New York.

115. The Plaintiff suffered injuries and damages.

### G. SEVENTH CAUSE OF ACTION

116.  The Plaintiff reiterates Paragraph #'s 1 through 115 and incorporates such by reference herein.

117.  Pursuant and under the pendent State law jurisdiction and per the doctrine of *respondeant superior (vicarious liability)*, the Defendant City of New York is responsible, as the principal in the principal agent relationship, for the conduct of the Defendant Officers, as employees and agents of the City of New York, taken in and during the course of their duties and functions.

118.  The Plaintiff suffered injuries and damages.

### H.   EIGHTH CAUSE OF ACTION

119.  The Plaintiff reiterates Paragraph #'s 1 through 118 and incorporates such by reference herein.

120.  When the City of New York represents its Officers in federal civil rights litigations alleging unconstitutional actions by its officers (which is almost always the case in 99.99 percent if not more of the situations where an Officer seeks representation), it is believed that it ordinarily and uniformly and as a matter of policy and practice indemnifies its Officers for any award of both punitive damages and compensatory damages.

121.  It is believed that the Officer-employee executes a retainer indemnification and representation letter which requires the Officer-employee, in return for indemnification, to subordinate his or her interests to the interest of his/her employer and indemnifier –the Defendant City of New York.

122.  It is believed, moreover, that, when a judgment is obtained against a New York City Police Officers for an Officer's violation of an individual's federally guaranteed Constitutional and civil rights and where the Officer has been represented by the New York City Attorney's Office and where the City of New York has paid the judgment of damages (compensatory and/or punitive damages), the Officer almost never has been subjected to a New York City Police Department disciplinary hearing and/or the imposition of discipline; and it is believed that, when a settlement has been made in such a litigation, the Officer ordinarily is never even informed of such.

123.  It is believed, moreover, that when a judgment is obtained against a New York City Police Officer being represented by the New York City's attorney office for the violation of an individual's constitutional and civil rights, the City of New York takes no action whatsoever to address such and discipline and/or train-retrain the Officer in any form or fashion for his or her unlawful and unconstitutional conduct and/or that the City does not change those policies and practices that propelled said conduct.

124.  The City of New York is, under the circumstances, the real party in interest.

125. The named and unnamed individual Defendants are employees and agents of the City of New York and their conduct, as described, was taken in the course of their duties and functions as New York City Police Officers and, in their capacities as such, as agents and employees of the City of New York.

126. Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken to the otherwise lawful performance of their duties and functions as agents and employees of the City of New York.

127. The Plaintiff is entitled to recover against the City of New York for the conduct of its named and unnamed Officers *under the federal claim jurisdiction* pursuant to the doctrine of *respondeat superior*.

128. The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

> [a] Invoke the jurisdiction of this Court.
>
> [b] Award appropriate compensatory and punitive damages.
>
> [c] Award appropriate declaratory and injunctive relief.
>
> [d] Empanel a jury.
>
> [e] Award attorney's fees and costs.
>
> [f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED: New York, New York
　　　　September 23, 2015

　　　　　　　　　　　　　　　　　Respectfully submitted

　　　　　　　　　　　　　　　　　/s/James I. Meyerson_____
　　　　　　　　　　　　　　　　　JAMES I. MEYERSON
　　　　　　　　　　　　　　　　　1065 Avenue of the Americas
　　　　　　　　　　　　　　　　　Suite # 300 (c/o NAACP)
　　　　　　　　　　　　　　　　　New York, New York 10018
　　　　　　　　　　　　　　　　　(212) 344-7474/Extension 129
　　　　　　　　　　　　　　　　　(212) 344-4447 [FAX]
　　　　　　　　　　　　　　　　　jimeyerson@yahoo.com
　　　　　　　　　　　　　　　　　ATTORNEY FOR PLAINTIFF
　　　　　　　　　　　　　　　　　BY:_____